**LEE ON, by his next friend, Lee Sin,**

v.

**John Foster DULLES, Secretary of State of the United States.**

**LEE MING, by his next friend, Lee Sin,**

v.

**John Foster DULLES, Secretary of State of the United States.**

**LEE SUN**

v.

**John Foster DULLES, Secretary of State of the United States.**

**Civ. A. Nos. 52–1427, 52–1428, 52–1447.**

United States District Court
D. Massachusetts.

May 19, 1955.

James E. Fitzgerald, Boston, Mass., for plaintiff.

Anthony Julian, U. S. Atty., James J. Sullivan and Andrew A. Caffrey, Asst. U. S. Attys., Boston, Mass., for defendant.

FORD, District Judge.

These are three actions under Section 503 of the Nationality Act of 1940, 8 U. S.C.A. § 903,[1] in each of which plaintiff asks a declaratory judgment that he is a citizen of the United States and as such is entitled to admission to the United States for permanent residence. The three plaintiffs claim to be brothers and the sons of an American citizen, Lee Sin.

Certain facts as to Lee Sin have been stipulated. Lee Sin is an American citizen, born in China, and admitted to the United States as an American citizen. He has made two trips to China, leaving the United States in August, 1929, and returning in January, 1933, leaving for the second trip in February, 1940, and returning in December, 1940. Chin Tui Lan was admitted to the United States on October 8, 1952 as the wife of Lee Sin.

The evidence for these three plaintiffs consists of almost wholly of the oral testimony of Lee Sin and Chin Tui Lan. If this testimony is believed, it establishes the following facts. Lee Sin and Chin Tui Lan were married in Hong Woo Village in the Toishan district of China on November 5, 1929. Four children of that marriage were born in China, Lee Sun on October 10, 1930, Lee Ming on December 14, 1931, Lee On on March 29, 1933, and Lee Ping on March 19, 1941. The three eldest of these are the three plaintiffs in these cases, who have made application for entry into the United States.

The basic fact in these cases is that all the cases turn on whether or not these two witnesses are to be believed. Two other witnesses added little, if anything of value, to plaintiffs' cases. There is, of course, a complete lack of documentary evidence to corroborate the statements of the witnesses. On the testimony of the witnesses official records of marriages and births were not made in China. In any case, as the government itself argues, such records, if they did exist, are not now available. As this court pointed out in Soo Hoo Yin Deep v. Dulles, D.C., 116 F.Supp. 25, this situation requires a careful scrutiny of the oral testimony to guard against the establishment of fraudulent claims and also against an unjust denial of the privilege of American citizenship to one rightfully entitled to it by birth.

It is the contention of the United States that there is not sufficient credible evidence to establish the essential elements of these plaintiffs' cases. First, it is said that the fact of the marriage of the alleged parents is not established. Both Lee Sin and Chin Tui Lan testified to the fact of the marriage. Evidence showed that when Lee Sin returned to the United States both in 1933 and 1940, he informed our immigration authorities that he had married Chin Tui Lan in 1929 in China. Chin Tui Lan testified in detail as to the making of the marriage contract between the parties and as to the actual ceremonies carried out in connection with the marriage. These ceremonies were in substantial accord with the description of the Chinese custom marriage given by authorities on Chinese law cited by plaintiffs. Moreover, the government has already recognized the marriage by admitting Chin Tui Lan to the United States as the wife of Lee Sin. The fact of a valid marriage between the alleged parents of the three plaintiffs must be taken as clearly established by the evidence.

It seems also clear that among the children born of this marriage were three sons, Lee Sun, Lee Ming, and Lee On. As to that fact there is the testimony of the mother, and as to the birth of the first two the testimony of the father. Lee Sin never reported the birth of any of his sons to an American consul in China. On his return to the United States in 1933 Lee Sin did report to the immigration authorities the birth of Lee Sun and Lee Ming and also that his wife was then pregnant. Again, on his return in 1940, he reported the birth of all three sons. Unless we are to indulge in groundless suspicions that since 1933 Lee Sin has been engaged in fabricating evi-

1. Now 8 U.S.C.A. § 1503.

dence for this case, there is no reason for disbelieving the testimony as to the birth of these sons.

There remains the question of whether these three sons are the same persons who applied in 1949 for admission to the United States under the names of Lee Sun, Lee Ming, and Lee On, and who are the plaintiffs in these cases. The evidence here is primarily the testimony of the mother, since the father has not seen the children since 1940. The mother last saw them in 1952 before she left Hong Kong for the United States. While in Hong Kong she testified before the American consular authorities in connection with these applications for admission and identified the three applicants as her sons of the same names. A photograph was introduced in evidence which she identified as one taken several years ago in China of herself and her four sons (the three plaintiffs and Lee Ping). The three boys as shown in this picture closely resemble the three plaintiffs as shown in the photographs included in the file on their passport applications.

■■ In urging that this testimony should be disbelieved, the government urges that an unfavorable inference should be drawn from the refusal of the father and mother to submit to blood type tests at the request of the government. However, it appears that this refusal was made on their behalf by their counsel for reasons which he deemed valid, such as the inability of the parents to meet the costs of blood tests and expert witnesses to controvert unfavorable conclusions which government experts might erroneously draw from the results of these tests. Whether his action was justifiable or not, the facts do not warrant the inference that these witnesses themselves refused to take the tests because they feared the results would disprove their statements. Similarly the administrative file contains reports of doctors in China who after x-ray examination of the bone development of the applicants, concluded that they were somewhat older than they claimed to be. No great weight can be given to this

evidence, however, in the absence of any expert testimony as to the nature and accuracy of these tests. Cf. Chin Ten Teung v. Ward, D.C., 30 F.Supp. 670.

The government also relies on numerous instances in which it is claimed that the testimony of the witnesses was contradictory, vague, or otherwise unsatisfactory. For instance, Lee Sin's statement as to sending money for the support of his family in China is that he sent money to his wife two or three times a year. Her memory of it was that it came four or five times a year. So also she says it was sent to the sons or other relatives. But she is unable to read or write, and in any case the draft had to be cashed for her by someone else. On the essential point, both agree that he did make regular contributions to the support of the family. The government points out that the father says he sent this money even in years when he says he filed no federal income tax return because he had so little income. It is clear from Lee Sin's testimony that during these years he was not very successful financially. But he claims only to have sent $200 or perhaps $300 to his family in any of these years. Furthermore, his financial status seems to offer an explanation of why he did not make any effort in earlier years to bring his family into the United States.

The alleged contradictory testimony of the mother as to her name seems of little importance. Indeed there is no necessary contradiction in her statements. The truth appears to be that under the Chinese method of nomenclature she could be known by her name of Chin Tui Lan, or after her marriage also by the name Chin Shee, and that in fact she did not use the latter name very much. Other discrepancies, such as a single reference by the mother to writing letters when her testimony is otherwise clear that she cannot read or write either Chinese, or English, or the failure of Lee Sin to have a picture taken of himself with his family while he was in China are concerned with points of only minor importance.

Lee Sin and his wife gave the appearance of telling the truth. Their story as to all the essential facts was clear and complete. There was no major contradiction on any substantial point. There were minor gaps and discrepancies as to details, but they were no greater than might be found in the testimony of any honest witness as a result of misunderstanding or failure of memory, or the difficulties arising from the necessity of testifying for the most part through an interpreter. Taken all together they do not constitute sufficient reason for rejecting the apparently truthful story of these witnesses.

On all the evidence the findings are that Lee Sin is a citizen of the United States, that he was validly married to Chin Tui Lan, that the plaintiffs Lee Sun, Lee Ming, and Lee On are sons born of that marriage, that as sons of Lee Sin they are citizens of the United States, entitled to admission to the United States for permanent residence.

Judgment for plaintiff in each case in accordance herewith.